Date signed February 12, 2014



ROBERT A. GORDON
U. S. BANKRUPTCY JUDGE

## IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE DISTRICT OF MARYLAND
#### at Baltimore

| | | |
|---|---|---|
| In re: | * | |
| Leonard Paul Raskin | * | Case No. 11-27484-RAG |
| Debtor | * | Chapter 7 |
| *    *    *    *    *    *  | * | |
| Leonard Paul Raskin | * | |
| Movant | * | |
| v. | * | |
| Susquehanna Bank | * | |
| Respondent | * | |

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

### MEMORANDUM OPINION IN SUPPORT
### OF ORDER AVOIDING JOINT LIEN AS TO ONLY THE
### DEBTOR'S AGGREGATE INTEREST IN REAL
### <u>PROPERTY OWNED BY THE ENTIRETIES</u>

## I.    <u>Introduction</u>

An apparent collision between the intent of the relatively new Maryland Homestead

Exemption statute and the venerable common law form of ownership known as tenants by the

entireties supplies the dramatic tension that fuels this case's plot.  The tough question presented is whether Leonard Raskin, a single-filing debtor, may use the combined force of 11 U.S.C. § 522(f) and § 11-504(f) of the Annotated Code of Maryland, Courts and Judicial Proceedings Article (Homestead Exemption), to avoid completely Susquehanna Bank's judgment liens against real estate owned as tenants by the entireties by him and his wife Kathy Raskin (who is not in bankruptcy) because the lien 'impairs' Mr. Raskin's homestead exemption.[1]  Because Kathy Raskin's undivided half-interest in the real estate is not property of the estate, settled common law would generally prevent Mr. Raskin from unilaterally impairing Susquehanna Bank's joint lien rights.  The recent case of *In re Alvarez*, 733 F.3d 136 (4th Cir. 2013) reaffirms that principle with respect to Section 506(a) of the Code.  Yet, the language of the Homestead Exemption strongly suggests that the Maryland legislature has created an exception to the rule.  Hence, does *Alvarez*'s holding, or like principles expressed in even older decisions, negate Mr. Raskin's strategy and insulate Susquehanna Bank's lien rights in this context or should the Homestead Exemption be enforced in accordance with its plain meaning?  The Court concludes that the Maryland legislature's intent must be honored, notwithstanding what the common law might require in another setting, albeit to a lesser extent than that prayed for by Mr. Raskin.

## II.    <u>Procedural History</u>

On August 26, 2011 (Petition Date), Mr. Raskin filed his Voluntary Petition for Relief under Chapter 7 of the Code.  On February 22, 2012, he filed a Motion to Avoid Judicial Lien Impairing Exemption Pursuant to 11 U.S.C. §522(f) (Motion to Avoid Lien) (Dkt. No. 71).  Susquehanna Bank (Susquehanna) filed its Opposition to Motion to Avoid Judicial Lien Impairing Exemption Pursuant to 11 U.S.C. §522(f) (Dkt. No. 72) on March 26, 2012.  The

---

[1] Unless otherwise noted, all subsequent federal statutory citations are to the Bankruptcy Code (Code), found at Title 11 of the United States Code.

Debtor filed a Reply Memorandum in Support of Motion to Avoid Judicial Lien Impairing Exemption Pursuant to 11 U.S.C. §522(f) (Dkt. No. 73) on April 2, 2012 and an evidentiary hearing was held on April 13, 2012.

The presentation of evidence took no more than ten minutes. It consisted only of the admission into evidence of Mr. Raskin's Exhibits 1 through 9 without objection, his expert appraiser giving an opinion as to the value ($500,000) of the subject real estate and then Susquehanna's fleeting cross-examination that pointed out the appraiser had not "valued" Mr. Raskin's undivided entireties interest but had only appraised the land. The legal debate that preceded the submission of evidence consumed the lion's share of the time.

When the words were exhausted, the Court requested additional memoranda to address the impact, if any, of the decisional law on a married, single-filing debtor's effort to avoid a joint lien against property owned by the entireties and the hearing was continued until June 15, 2012 for further argument.[2] In quick succession, the parties filed the Debtor's Post-Hearing Memorandum in Support of Motion to Avoid Judicial Lien Impairing Exemption Pursuant to 11 U.S.C. §522(f) (Dkt. No. 79), Susquehanna Bank's Post Trial Memorandum in Further Support of its Objection to Debtor's Motion to Avoid Judicial Lien Impairing Exemption Pursuant to 11 U.S.C. §522(f) (Dkt. No. 80) and, finally, Debtor's Post-Hearing Reply Memorandum in Support of Motion to Avoid Judicial Lien Impairing Exemption Pursuant to 11 U.S.C. §522(f) (Dkt. No. 81). After the June 15th hearing the matter was taken under advisement.[3]

---

[2] The Court noted the conflict between *In re Hunter*, 284 B.R. 806 (Bankr. E.D. Va. 2002) and *In re Strausbough*, 426 B.R. 243 (Bankr. E.D. Mich. 2010) with respect to the application of Section 506(a) in a similar factual context.

[3] The Court has already apologized to the parties for the long delay between the June 15th hearing and the issuance of this Opinion, but it bears repeating. The delay was unavoidable due to serious circumstances beyond the Court's control.

### III.    Factual Background

The uncontested facts are simple.  On March 25, 2011, Susquehanna commenced a state court confession of judgment proceeding (State Court Case) against Mr. Raskin, Mrs. Raskin and others. Susquehanna's claims were based upon the alleged guaranties by the Raskins of indebtedness due from their co-defendants.  On April 8, 2011, judgments by confession were entered against the Raskins.  These judgments resulted in valid, joint liens (Susquehanna Liens) against 4010 Eland Road, Phoenix, Maryland (Eland Road), the Raskins' principal residence.[4] Mr. and Mrs. Raskin own Eland Road as tenants by entireties and it was encumbered by the Susquehanna Liens as of the Petition Date.

While Mrs. Raskin apparently continues to contest the validity of the judgments against her, Mr. Raskin has thrown in the towel in the State Court Case in favor of his hope that the Motion to Avoid Lien will net comprehensive relief for both he and his wife in this Court. Their divergent paths were noted at Paragraph 13 of the Debtor's Objection to Susquehanna Bank's Motion to Terminate the Automatic Stay in Order to Prosecute State Court Proceedings (Dkt. No. 55) which states, "[t]he Debtor admits that Mrs. Raskin currently seeks to have the Confessed Judgments entered against her vacated but denies that the Debtor is seeking to pursue further litigation with the Bank."  On Susquehanna's side of the equation, it stated in the preamble to the Motion to Terminate that it was filed to obtain an order from this Court, "terminating the automatic stay…in order to prosecute the [judgments in the State Court Case]…and …deferring the Debtor's discharge until such prosecution has been concluded."[5]

---

[4] *See* Susquehanna's Motion to Terminate the Automatic Stay in Order to Prosecute State Court Proceedings (Motion to Terminate) (Dkt. No. 50).  Susquehanna did not file a proof of claim in this case but based upon the Motion to Terminate, the total judgments entered against the Debtor appear to be in excess of $4 million while the Susquehanna Liens total approximately $1,334,310.91.

[5] Susquehanna relied upon old law.  In bygone days, a party owed a joint debt by husband and wife often had to race into the bankruptcy court to secure the deferral of the entry of a married, single-filing debtor's discharge and then

4

The Motion to Terminate was first heard on December 2, 2011 and that hearing was continued to January 13, 2012 for final argument and an oral ruling.  On that day, the Motion to Terminate was denied with this Court holding that there would be no practical purpose – and hence no 'cause' – to lifting the stay in favor of Susquehanna as (1) Mr. Raskin was not contesting Susquehanna's right to a judgment against him under Maryland law and therefore there was nothing meaningful for the state court to do and (2) Mr. Raskin's exercise of his homestead exemption would have to, at a minimum, trump Susquehanna's right to enforce its judgment against Mr. Raskin's interest in Eland Road.[6]

Eland Road is encumbered by two senior deeds of trust held by Wells Fargo Home Mortgage in the approximate amounts of $450,692.00 and $32,813.00.  Mr. Raskin has claimed a homestead exemption of $16,495.00 on the basis of his interest in Eland Road.  He argues that when the formula set forth in Section 522(f)(2)(A) is applied, the Susquehanna Liens impair his exemption and must be avoided. Moreover, he also asserts that the statute's benefit can only be fully realized in this instance if it is interpreted to nullify the joint Susquehanna Liens *in their entirety*, notwithstanding (a) the fact that his wife's undivided interest is not subject to this Court's jurisdiction and (b) the protection that would normally be afforded to the Susquehanna Liens by otherwise applicable law.  Susquehanna, on the other hand, takes the position that the

---

obtain a joint judgment in the state court to preserve its rights against property held by the entireties.  This was so because a single-filing spouse could, if both clever and lucky enough, obtain a discharge first and in that way, forever change a joint debt into an individual obligation of the non-filing spouse.  *Phillips v. Krakower*, 46 F.2d 764, 765 (4th Cir. 1931) condemned this strategy as "legal fraud" reasoning that an individual spouse should not be able to use bankruptcy to achieve a result that could not be achieved outside of bankruptcy – the nullification of a joint debt and the insulation of entireties property – if the creditor was savvy enough to foresee the possible consequences.  *See also Chippenham Hosp., Inc. v. Bondurant*, 716 F.2d 1057, 1058-59 (4th Cir. 1983); *Davidson v. Virginia Nat'l Bank*, 493 F.2d 1220, 1222 (4th Cir. 1974).  *Sumy v. Schlossberg*, 777 F.2d 921 (4th Cir. 1985) held that (1) a married single-filing debtor could not exempt entireties property from the claims of joint creditors and (2) the debtor's trustee could administer such property in a single spouse's bankruptcy for the benefit of those joint creditors, thus lessening the burden on subsequent joint creditors who find themselves in a position similar to Mrs. Krakower.

[6] Admittedly, the second part of the ruling was made without the benefit of an in-depth analysis of the arguments pro and con.

Homestead Exemption cannot be used to negatively affect its lien at all but, if the statute is applied in this context, it must be applied as conservatively as possible in light of the principles embodied within the vast mountain of case law that interprets the entireties estate and the inevitable impact of those principles upon Mr. Raskin's strategy.[7]

## IV.    **Jurisdiction and Venue**

The Court has jurisdiction over this contested matter pursuant to 28 U.S.C. §§1334, 157(b)(2)(B) and (K) and Local Rule 402 of the United States District Court for the District of Maryland.  Venue is likewise proper under 28 U.S.C. §1409(a).

## V.    **Analysis**

Under Section 522(f)(1), "the debtor may avoid the fixing of a [judicial] lien on an interest of the debtor in property to the extent that such lien impairs an exemption...".  Section 522(f)(2)(A) supplies the mandatory arithmetic for determining impairment:

> a lien shall be considered to impair an exemption to the extent that the sum of – (i) the lien; (ii) all other liens on the property; and (iii) the amount of the exemption that the debtor could claim if there were no other liens on the property; exceeds the value that the debtor's interest in the property would have in the absence of any liens.

---

[7] Maryland's Court of Appeals has described the entireties estate as follows:

> Tenants by the entireties are, in the contemplation of the common law, which is the law of this state but one person, and hence they take, not by moieties, but the entirety.  They are each seized of the entirety and the survivor takes the whole.  The nature of this estate forbids and prevents the sale or disposal of it, or any part of it, by the husband or wife without the assent of both… . The husband cannot convey, incumber (sic), or at all prejudice such estate to any greater extent than if it rested in the wife exclusively in her own right.  He has no estate as he can dispose of to the prejudice of the wife's estate.  The unity of husband and wife as one person, and the ownership of the estate by that person prevents the disposition of it other than jointly.

*Ades v. Caplan*, 132 Md. 66, 103 A. 94, 95 (Md. 1918) (internal citations omitted). The Court in *In re Beihl,* 197 F. 870, 873 (E.D. Pa. 1912), after listing a handful of the attributes of the entireties estate wrote, "[a]nd this catalogue of difficulties could easily be extended, if it were necessary to exhibit more plainly the peculiar structure that has been built on the foundation of pure fiction."

A debtor must have an allowable exemption available that applies to the property subject to the lien in order to realize the benefit of the statute. Section 522(b) allows a debtor to choose between federal or state exemptions, "unless the State law that is applicable to the debtor… specifically does not so authorize." 11 U.S.C. § 522(b)(2). Maryland has opted out of the federal exemptions, *see* Md. Code, Cts. & Jud. Proc. § 11-504(g), and hence Mr. Raskin is limited to selecting from only the Maryland exemptions. These include the Homestead Exemption which provides in relevant part that, "in any [bankruptcy proceeding] any individual debtor …may exempt the debtor's aggregate interest in…[o]wner-occupied residential real property…". Md. Code, Cts. & Jud. Proc. § 11-504(f)(1)(i). Companion subsection 11-504(f)(1)(ii) limits the total value of the exemption to no more than the adjusted total exemption allowed under Section 522(d)(1).[8] The ability to use the Homestead Exemption is also limited by venue, time and familial relationships. First, it may only be used in bankruptcy cases. Second, subsection (f)(2) states that an individual may not claim the exemption if certain family members, including a spouse, have claimed the exemption as to the same property within eight years prior to the bankruptcy filing.[9] And third, subsection 11-504(f)(3) states that the exemption, "may not be claimed by both a husband and a wife in the same bankruptcy proceeding." Md. Code, Cts. & Jud. Proc. § 11-504(f)(3). It is undisputed that none of the limits or exclusions apply to Mr. Raskin and he is entitled to use the Homestead Exemption.

Applying subsection 522(f)(2)(A), and the Homestead Exemption to the facts presented yields this result:

---

[8] Section 522(d)(1) is the federal 'residence and burial plot' exemption, a droll combination to be sure. Its monetary ceiling can vary in accordance with Section 104(a). At the time this case was filed, that amount was $21,625 and the amount selected by Mr. Raskin ($16,495) is enough to consume the available equity in Eland Road.

[9] Although unstated in the Homestead Exemption, the eight year bar must have been selected to track the period a debtor must normally wait before receiving a subsequent discharge. *See* Section 727(a)(8).

| | |
|---|---|
| Susquehanna Liens | $1,334,310.91 |
| Wells Fargo Mortgage I | $450,692.00 |
| Wells Fargo Mortgage II | $32,813.00 |
| Allowable Homestead Exemption[10] | + $21,625.00 |
| Total | $1,839,440.91 |
| Debtor's Interest[11] | - $500,000.00 |
| Amount by which sum of all liens and Debtor's exemption exceeds the value of the Debtor's interest in the absence of any liens | **$1,339,440.91** |

If Mr. Raskin was an unmarried debtor and everything else was equal, then the foregoing calculation would be the beginning and end of the inquiry. The Court could easily find that the Susquehanna Liens impair his exemption and enter an appropriate order. Unfortunately for Mr. Raskin, in this instance his marriage complicates things. Indeed, Susquehanna has labored mightily to establish that his marriage, and the fact that Mrs. Raskin is not in bankruptcy, disqualifies him from utilizing the Homestead Exemption in any way that negatively impacts its lien rights. Susquehanna argues that:

a. The Susquehanna Liens do not impair Mr. Raskin's homestead exemption because the liens do not attach to the Debtor's undivided interest in Eland Road but instead attach to the undivided whole of the tenants by the entirety estate;

b. As Mrs. Raskin is not in bankruptcy, and her interest in Eland Road is not subject to this Court's jurisdiction, Mr. Raskin cannot utilize the power of Section 522(f) to nullify even a sliver of the joint Susquehanna Liens;

c. Allowing Mr. Raskin to use the Homestead Exemption to nullify the Susquehanna Liens would amount to condoning the "legal

---

[10] This is the amount Mr. Raskin *could* exempt, per Section 522(f)(2)(A).

[11] For purposes of the calculation, the Court has assigned 100% of Eland Road's uncontested fair market value to Mr. Raskin's undivided interest. If his interest were assigned a value of $250,000, the Susquehanna Liens would still impair his exemption.

fraud" condemned by a venerable line of cases that begins with *Philips*; and

d.    The precise language of the Homestead Exemption statute, viewed against the background of settled entireties law, does not permit the avoidance of the Susquehanna Liens in their entirety.

The first contention relies upon language included in *In re Ford*, 3 B.R. 559, 570-71 (Bankr. D. Md. 1980), *aff'd sub nom., Greenblatt v. Ford*, 638 F.2d 14 (4th Cir. 1981).  The argument is that the Susquehanna Liens do not impair Mr. Raskin's exemption because they attached to only the "entire, combined, and unsevered interests, as a unity, of," both Mr. and Mrs. Raskin in Eland Road as opposed to his individual undivided interest in the whole.  *Id.* at 576.  Yet *Ford* also acknowledges that upon the filing of bankruptcy, "what passed to the estate and became an asset of the estate was [the debtor's] individual undivided interest as a tenant by the entirety."  *Ford,* 3 B.R. at 575; *see also* Section 541(a)(1). Therefore, Mr. Raskin's undivided interest in Eland Road is within this Court's jurisdiction.  *Matter of Paeplow*, 972 F.2d 730, 736 (7th Cir. 1992); *Sumy*, 777 F.2d at 923-24; *Bondurant*, 716 F.2d at 1058.

Viewed in this light, Susquehanna's argument that its liens do not attach to Mr. Raskin's individual interest splits the hair too finely.  Notwithstanding the language in *Ford* that Susquehanna relies upon, and the often confounding metaphysics of an entireties estate, *Sumy* long ago acknowledged the possibility that the passage to the estate of an individual debtor's undivided interest in entireties property could result in the avoidance of a joint lien secured by that undivided interest if the lien impairs an exemption.  The Court stated, "[i]f the debtor's interest in entireties property is exempt under § 522(b)(2)(B)[12], then most pre-petition judicial liens on that property would impair that exemption and be avoidable at the debtor's option under

---

[12] The Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 moved what had been Section 522(b)(2)(B) to the present Section 522(b)(3)(B) without changing the language.

§ 522(f)(1)." *Sumy*, 777 F.2d at 930. Admittedly, the *Sumy* Court was marshalling policy

reasons as to why neither Mr. Sumy's undivided interest, nor the entire entireties estate, was

exempt from the claims of joint creditors notwithstanding the erroneous *dicta* included in *Ford*.[13]

But the Court's observation makes it clear that a single-filing married debtor could use Section

522(f)(1) to avoid a lien interest lodged against an undivided entireties interest if a proper

exemption was available.[14] Mr. Raskin does not rely upon Section 522(b)(3)(B), or any theory

of entireties property, as the source of his exemption rights. He relies upon the Homestead

Exemption, a recent enactment of the Maryland legislature. The legislature can plainly adjust the

common law and that power includes the adjustment of property rights. *Paeplow*, 972 F.2d at

736-37 (recently enacted Indiana exemption statute alters the historic treatment of property

owned by the entireties); *In re Continental Midway Corp.*, 185 F.Supp. 867, 870 (D. Md. 1960);

*Pope v. State*, 284 Md. 309, 341, 396 A.2d 1054, 1073 (Md. 1979); *County Council for*

*Montgomery County v. Investors Funding Corp.*, 270 Md. 430, 312 A.2d 225 (Md. 1973); Art. 5

of the Md. Declaration of Rights. Indeed, it appears that is precisely what the Maryland

legislature intended to do in this instance by enacting the Homestead Exemption which, once

operative, necessarily must be combined with the power of Section 522(f) when an entitled

debtor makes the choice to do so.[15]

---

[13] The *Ford* opinion incorrectly stated that then Section 522(b)(2)(B) operated to exempt entireties property from even the claims of joint creditors. *Ford*, 3 B.R. at 576. The court failed to recognize that the exemption applies only to the extent that the interest is "exempt from process under applicable nonbankruptcy law." *Sumy* corrected this misconstruction. *See*, footnote, 5, s*upra*.

[14] It is equally certain that trustees have the power to unilaterally sell entireties property – something a spouse could not do outside of bankruptcy – on the basis of the single-filing spouse's undivided interest whether the non-filing spouse consents or not. *See* Section 363(h).

[15] Even if *Alvarez*'s holding, discussed *infra*, could be taken as an affirmation of *Ford*'s view that the joint lien attaches to the spouses' 'whole' entireties interest, and not that of only one spouse, the holding cannot be interpreted to undercut the legislature's prerogative to change the law, if that is what the legislature intended. This Court believes that it was.

Sharpening its aim, Susquehanna nevertheless contends, relying upon *In re Hunter*, 284 B.R. 806 (Bankr. E.D. Va. 2002), that in order to avoid the Susquehanna Liens, this Court must also have jurisdiction over Mrs. Raskin's undivided interest.[16]  Anticipated in *Sumy*, this argument has been raised and rejected in prior cases decided under Section 522(f).  *See In re Lashley*, 206 B.R. 950 (Bankr. E.D. Mo. 1997) (Because spouses each own the whole of the entireties interest, the Court has jurisdiction over the entireties estate due to the single spouse's filing and may avoid a joint judicial lien in its entirety, leaving only an unsecured claim against the non-filing spouse); *In re Janitor*, No. 10-22594, 2011 WL 7109363 (Bankr. W.D. Pa. Jan. 4, 2011) (In the case of a single-filing spouse, the debtor's exemption of an interest in property owned by the entireties, and lien avoidance due to impairment under Section 522(f), does not impermissibly sever the tenant's by the entirety estate, but the joint lien will only be avoided as to debtor's interest and not as to non-filing spouse's survivorship interest); *In re Sisk*, No. 11-32350, 2011 WL 6153277 (Bankr. W.D. N.C. Dec. 12, 2011) (avoiding a joint lien as to only the single-filing debtor's interest in the entireties real estate because the debtor's spouse was not in bankruptcy); *see also In re Staples*, No. 00-10147C-7G, 2000 WL 33673800 (Bankr. M.D. N.C. June 13, 2000) (avoiding a judicial lien under Section 522(f) on tenants by the entirety property where only one spouse was in bankruptcy and deciding that the lien should be avoided as to only the debtor's interest in the real estate without addressing whether the non-filing spouse's interest need be before the court).[17]

---

[16] *Alvarez* had not been decided by the time of the final argument in this case.  Nevertheless, the Fourth Circuit's ruling affirms *Hunter*.

[17] *Lashley, Sisk* and *Staples* each involved the application of state homestead exemptions.  *Janitor* applied the federal exemptions allowed under Sections 522(d)(1) and (5). In the wake of *Alvarez*, the quantum of the underlying interpretation of entireties law by *Lashley* and *Janitor* would not be accepted as sound reasoning in this Circuit. *Lashley* interprets Missouri entireties law and holds that because the debtor owns "the whole of the [entireties] interest," avoidance of the lien as to the debtor's interest "avoids the lien on the whole of the property."  206 B.R. at 953.  *Janitor* goes to great lengths to distinguish *Hunter's* view of Pennsylvania entireties law and thus is in direct

These cases are grounded upon (1) the premise that the debtor's interest in entireties property becomes property of the estate and (2) Section 522(f)'s unambiguous right to avoid a lien that encumbers "an interest of the debtor in property" if an exemption is available and is impaired by the lien.  The available exemption in this case — the Homestead Exemption — falls squarely in Mr. Raskin's favor.  The statute's plain language permits him to exempt his "aggregate interest" in his "owner occupied residential real estate" without conditioning the right upon the form of ownership.  Section 522(f)(1) allows him to "avoid the fixing of a lien" on his "interest" in property to the extent the lien impairs his exemption.  These benefits are not made dependent upon a joint filing by a married couple.  To the contrary, the Homestead Exemption takes the *opposite* approach by limiting the exemption's use to only one spouse, especially if there is a jointly-filed bankruptcy.  And that peculiar limitation extends for eight years after the exemption is used.  Moreover, the fact that the exemption is only available in bankruptcy proceedings (as opposed to a state court execution or foreclosure case) is even stronger evidence that the legislature knew exactly the impact it sought to achieve by enacting the statute.

The exercise of an exemption grants two practical benefits to a debtor.  One is the ability to keep the exempt property and the other is the right to shield it from future collection efforts, including those that could have been based upon pre-existing liens that would pass through bankruptcy unaffected but for the Code's avoidance powers.  *See* Sections 522(c) and (k).  Section 522(f) embodies one of the many avoidance powers that operate hand in hand with

---

conflict with *Alvarez*.  Nevertheless, in this context, this Court agrees with the cited cases to the extent they provide support for the proposition that the undivided entireties interest of a married, single-filing debtor comes into the estate and the legislature may create exemptions that, when coupled with Section 522(f), are sufficient to compel the avoidance of a lien against that interest.  *In re Marino*, 27 B.R. 282 (Bankr. N.D. Ind. 1983) is the only case uncovered in which a debtor was denied the ability to avoid any portion of a joint lien against entireties property under Section 522(f) and that was largely based upon an interpretation of the Indiana exemption statute.  However, the Seventh Circuit later rejected *Marino*'s interpretation of the statute.  *Paeplow*, 972 F.2d at 736.  *Marino* is, therefore, largely discredited, although not explicitly overturned.

exemption rights.  With that symmetry in mind, is it reasonable to conclude that the Maryland legislature would enact the state's very first homestead exemption statute[18], limit its application to only bankruptcy cases, expressly indicate that one spouse is entitled to use the exemption for 'owner occupied real estate', continue that restriction for eight years and then silently exclude from its reach the undivided entireties interest of the spouse entitled to exercise the exemption right?  Or intend, without expressly saying so, that it cannot be used by that spouse in conjunction with Section 522(f).  This Court does not think so.  In Maryland, spouses *presumptively* take title to real estate as tenants by the entireties. *Young v. Cockman*, 182 Md. 246, 251, 34 A.2d 428, 431  (Md. 1943) ("A conveyance to husband and wife will ordinarily create a tenancy by entireties… ."); *see also* Md. Code, Real Prop. §2-117.  The Court does not have statistics to prove the point but decades of experience teach that in Maryland, tenancy by the entireties is the most common form of spousal real estate ownership.  The Court will assume that the legislature understood this too and that if it had wanted to exclude marital real estate owned by the entireties from the Homestead Exemption, or attempt to bar individual spouses from using Section 522(f) (assuming it could somehow override the Supremacy Clause), it could have easily expressed that intent in a manner that would eliminate guesswork.  The fact that neither approach was taken is strong evidence in favor of Mr. Raskin's position.[19]

In part because there appear to be no meaningful Section 522(f) cases that support its position, Susquehanna instead turns to cases which address Section 506, especially *Hunter*, whose reasoning and holding were adopted in *Alvarez*.  At this stage, *Alvarez* is the opinion that

---

[18] It appears that Maryland was the only state of the fifty that did not have a homestead exemption statute.

[19] Insofar as the facts at bar are concerned, the Homestead Exemption's intent is unambiguous. Even so, because of the unexplained change in the common law, and the apparent discrimination against jointly filing married couples (or even, it seems, separately filing married individuals due to the 'single use in eight years' proscription) discussed *infra*, the Court attempted to uncover any helpful legislative history.  None was found.

must be addressed.  Were it not for the Homestead Exemption, and if all else were equal, *Alvarez*, and the common law it is built upon, would likely mandate victory for Susquehanna. Indeed, *Alvarez's* holding, "that the bankruptcy court correctly determined that it lacked authority to strip off the debtor's valueless lien because only the debtor's interest in the estate, rather than the complete entireties estate, was before the bankruptcy court…" 733 F.3d at 138, seems to require that result.  However, the *Alvarez* decision is distinguishable.

     *Alvarez* interprets Section 506(a)(1) (which divides a lienholder's claim into secured and unsecured depending upon the value of the estate's interest in the property) and evaluates Mr. Alvarez's assertions within the context of deeply rooted entireties jurisprudence.  Because Mr. Alvarez's wife did not file bankruptcy and her undivided interest was not before the bankruptcy court, the Fourth Circuit decided that the joint lien could not be stripped from entireties real estate. Relying in part upon *Ford's* analysis, the Court reasoned as follows:

> [B]ecause a bankruptcy trustee obtains only custody of a debtor's interest in entireties property, the filing of an individual bankruptcy petition and the creation of an individual bankruptcy estate do not sever the unities of a tenancy by the entirety.  Therefore, under our precedent and in accordance with principles of Maryland law, only Mr. Alvarez's interest in the entireties property, and not the whole of the entireties property owned by the marital unit, became part of his bankruptcy estate.

*Id*. at 141 (internal citations omitted).

     However, the Court also recognized that the legislature (in that instance Congress) can alter the playing field.  Mr. Alvarez argued that since Section 363(h) permits a trustee to sell entireties property with neither the consent nor presence of a non-debtor spouse, the entire entireties estate must be subject to bankruptcy court administration.  In response the Court explained, "[t]his provision represents a narrow legislative exception to the general common law

14

rule prohibiting any unilateral severance of an entireties estate." *Id*. at 142.[20]  And that distinction – the presence of a permissible exercise of legislative power – provides the difference here: to the extent the common law would otherwise bar Mr. Raskin from unilaterally avoiding the Susquehanna Liens, the Maryland legislature has decreed otherwise by enacting the Homestead Exemption, notwithstanding the resulting awkwardness and somewhat mystifying potential for collateral damage to joint filing married couples discussed below.  Suffice to say here that the legislature's exercise of its prerogative also negates the argument that this is a case of "legal fraud".

In *Phillips*, Mrs. Krakower held a $5,500 note signed by the debtor, Mr. Phillips, and his wife, who together owned a parcel of Baltimore real estate by the entireties.  When Mr. Phillips was adjudged bankrupt, Mrs. Krakower sought to delay the entry of his discharge in order to secure a state court judgment and lien against the land.  In affirming the bankruptcy court's deferral of the discharge, the Fourth Circuit noted that Mr. Phillips' undivided interest did not become a part of his bankruptcy estate and therefore was not subject to administration by the trustee.[21]  The Court also recognized the settled state law principle that while individual creditors have no claim against, and may not execute upon, entireties assets, joint creditors, such as Mrs. Krakower, may do so in the ordinary course.  Then the Court explained why deferral of discharge was the correct result:

> The discharge of Phillips in bankruptcy not only will prevent
> judgment being obtained against him on the note, but will prevent
> also, during his lifetime, the property held by entireties being
> subjected to the satisfaction of any judgment which may be

---

[20] Long ago, the Maryland Court of Appeals in *Ades* deferred to Congressional intent and accepted without blinking the avoidance by operation of bankruptcy law of a joint lien on the individual interest in entireties property of a sole filing spouse. *Ades*, 103 A. at 95 ("[U]pon the filing of the [bankruptcy] petition within the period mentioned above the lien of the judgment, so far at least as the right of the husband in the estate by entirety was concerned, was struck down by the provisions of the federal act… .").

[21] That was the law at that time.

> obtained against his wife.  And so, although the bankruptcy
> proceeding has brought no interest in the estate by entireties into
> court for the benefit of the creditors of Phillips, his discharge in
> bankruptcy will remove that entire property beyond the reach of
> creditors entitled to subject it to their claims.

*Phillips*, 46 F.2d at 764.

The Court observed that if Mr. Phillips' sleight of hand was allowed it would amount to "legal fraud" and therefore, the bankruptcy court's protection of Ms. Krakower's joint debt and state law enforcement rights was affirmed.  *Id.*  The use of equity to achieve justice in *Phillips* is beyond reproach.  However, Mr. Phillips raised no independent state law that mandated a different result. Nor was any mentioned in any of the subsequent 'legal fraud' decisions. Because that is precisely what the Homestead Exemption does, it cannot be 'legal fraud' to allow Mr. Raskin to exercise his exemption rights.  *See* Section 522(b)(2); *Eaton v. Boston Safe Deposit & Trust Co.*, 240 U.S. 427, 429 (1916) ("The policy of the bankruptcy act is to respect state exemptions… ."); *Herbert v. Fliegel,* 813 F.2d 999, 1002 (9th Cir. 1987) ("Whatever the policy considerations, the [exemption] issue is still governed by the Oregon statute."); *Paeplow*, 972 F.2d at 736-37; *In re Donaldson,* 156 B.R. 51, 53 (Bankr. N.D. Ca. 1993).

Nevertheless, the reach of the Homestead Exemption can extend no farther than what is permitted by its language. Hence, at this juncture the Court must part ways with Mr. Raskin's reasoning in favor of Susquehanna's.  This is so because the express language of the Homestead Exemption cannot be interpreted to permit the complete avoidance of the Susquehanna Liens. While this result is ungainly, it is required by basic principles of statutory construction. *Caminetti v. U.S.,* 242 U.S. 470, 485 (1917) (If the language of a statute is plain, and does not lead to an absurd or impracticable result, it is the sole evidence of legislative intent and the sole function of the court is to enforce it).   Subsection (f)(1)(i) of the Homestead Exemption grants

the exemption to only "any *individual* debtor" in a *bankruptcy proceeding* and applies it to only "*the debtor's aggregate interest* in…[o]wner-occupied residential real property." A debtor may not claim the exemption if the debtor's spouse has successfully claimed the exemption within the past eight years. Md. Code, Cts. & Jud. Proc. § 11-504(f)(2)(i). And the exemption may not be claimed by both spouses in a joint bankruptcy proceeding. Md. Code, Cts. & Jud. Proc. § 11-504(f)(3). Applying these restrictions at face value, the conclusion is inescapable that only one spouse can use the Homestead Exemption and, in the case of property owned as tenants by the entireties, that spouse is limited to avoiding a joint lien only to the extent that it attaches to his or her aggregate interest in the property and impairs his or her exemption. While this result crashes like a wave into the principles articulated in *Ford*, reviewed in *Sumy* and reaffirmed in *Alvarez,* the Court cannot see any other way to make sense of – and rationally apply – the language. The legislature only granted the right to use the exemption to a lone spouse. Without an explicit bar against using the exemption for an entireties interest, it must be assumed that the legislature understood fundamental aspects of Maryland real property law – chief among them the way property is normally owned by husband and wife – when the statute was enacted and, nevertheless, chose this awkward, but not quite absurd, result. Stated another way, a worse outcome would be to rob Mr. Raskin of his express statutory right by grafting on a judge-made exception that excludes entireties interests from an exemption right that the legislature has expressly granted.[22]

---

[22] There is a full body of case law that permits a court to avoid an "absurd result" when interpreting a statute. *Caminetti*, 242 U.S. at 490; *Kaczorowski v. Mayor & City Council of Baltimore*, 309 Md. 505, 513-14, 525 A.2d 628, 632 (Md. 1987). However, that is a dangerous tool. In any event, the avoidance of the lien against only Mr. Raskin's interest is not an absurd outcome, as strange as it seems. The result ultimately means that the Susquehanna Liens cannot be involuntarily enforced against Eland Road unless Mrs. Raskin survives Mr. Raskin and his undivided interest passes to her. *Ades*, 103 A. at 95. And that would have to occur before the passage of eight years and a bankruptcy filing by Mrs. Raskin to complete the unfinished business. The Court concludes that it would be absurd to instead adopt Susquehanna's suggested limit – that the exemption could *only* be applied to carve out a portion of the proceeds for Mr. Raskin upon liquidation of Eland Road – as was suggested during oral argument.

However, because no two spouses can ever utilize the exemption at the same time (or by one for eight years after its use by the other), and in light of the common law principles of unity that generally govern the entireties estate, it appears the exemption can *never* be used in the same time frame to completely avoid a joint lien against property owned by the entireties.[23]  That outcome frankly does not make sense but, in this context, that observation is irrelevant.  This is so because on these facts, Mr. Raskin's contention – that the statute cannot be interpreted to exclude from its reach entireties property and associated joint liens – at best raises only a hypothetical issue: Mrs. Raskin is not in bankruptcy and therefore is not discriminated against by the Homestead Exemption's apparent injustice.

Mr. Raskin argues passionately that this incongruity could not have been intended:

> [U]nder [Susquehanna's] argument, the [Homestead Exemption] would never be available to any married person in a bankruptcy case if a creditor beats them to the court and gets a judgment lien on marital property, regardless of whether both husband and wife filed for bankruptcy jointly.

> …if [Mrs. Raskin] were to lose [the State Court Case] and seek bankruptcy relief, she would not be permitted to claim her interest in [Eland Road] as exempt under the [Homestead Exemption], leaving not only [her] interest permanently subject to the [Susquehanna Liens], but also leaving the Debtor burdened with the [Susquehanna Liens] on [Eland Road], which would prevent the Debtor from ever selling or refinancing [Eland Road].  This would be the result, as there is no precedent in English common law or Maryland (nor should there be) for a tenancy by the entirety interest being subject to a lien held by a creditor on only one

---

Ct.'s Hr'g Recording, June 15, 2012, 24:20-26:58. The exemption right must be enforced in accordance with its terms, and in combination with the accompanying rights of Section 522(f), and the avoidance of the lien against only Mr. Raskin's undivided interest seems to be the most conservative way to honor the statute's language (and weave a somewhat tattered silk purse), all things considered. To the extent this outcome indirectly benefits Mrs. Raskin, that is the legislature's choice to make.

[23] Taken together, the eight year limitation that applies to a host of individual family members, and the 'one spouse' rule, seems to limit the Homestead Exemption's use to only the first family member who seeks to claim it with respect to a particular piece of jointly owned property, regardless of the form of ownership, or whether the bankruptcy filing is joint or separate.

> tenant's interest in the entirety property, so that the cloud on the
> Debtor's interest in [Eland Road] would forever encumber that
> interest notwithstanding the avoidance of the [Susquehanna Liens]
> on the Debtor's interest.

(Debtor's Post-Hr'g Mem. 13.)

For these reasons, Mr. Raskin claims that the legislature must have intended the Homestead Exemption to benefit both spouses – and for joint liens to be entirely avoided from entireties property – notwithstanding the express application to only the "aggregate interest" of the individual who files bankruptcy and the limitation on its availability to only one spouse. The reasons why the legislature would decide to withhold from a married, single-filing debtor the ability to avoid entirely a joint lien against entireties property are readily understandable; they are the same reasons that underlie *Alvarez* and are likely based upon a respect for the unity of the entireties estate.[24] Therefore, no tears should be shed for Mr. Raskin as a result of the limited relief granted by this Opinion. Because Mrs. Raskin is not in bankruptcy, the 'one spouse at a time' dichotomy does not work a hardship on Mr. Raskin (or her), when viewed from the standpoint of a common law purist. Furthermore, while strange, the result in this case is consistent with *Ades*, the only Maryland case uncovered that speaks directly to the permissibility of a wounded, but still breathing, post-bankruptcy entireties shell.

In *Ades*, Section 67f of the Bankruptcy Act of 1898 was interpreted as automatically discharging from an insolvent debtor's property any lien obtained within four months of the bankruptcy filing. *Ades*, 103 A. at 94. The debtor and his wife owned property by the entireties and the creditor obtained a joint judgment within the four month period. Later, when the creditor sought to enforce the judgment in a post-bankruptcy collection action, the debtor sought an injunction on the basis of Section 67f. The Court of Appeals observed that the effect of Section

---

[24] By the same token, somewhat less respect is shown for the symmetry of the entireties estate by permitting an individual spouse to avoid 'half' of the joint lien.

67f would have to be honored unless the entireties estate required, "a different meaning to be

given to the act."  That notion was rejected:

> [U]pon the filing of the aforesaid petition within the period
> mentioned above the lien of the judgment, so far at least as the
> right of the husband in the estate by entirety was concerned, was
> struck down by the provisions of the federal act, the effect of
> which was practically the same as if the judgment had been
> recovered against the wife alone, in which case the said leasehold
> property could not have been sold during the lifetime of the
> husband, if at all, under an execution  issued on such judgment.

*        *        *

> It is clear, we think, that the leasehold property, now held as an
> estate by entirety cannot be sold at any time before the death of the
> husband, if then, under an execution issued on said judgment as it
> now stands, and therefore we find no error in the court below in
> overruling the demurrer to the bill and in granting the injunction
> prayed for therein.

*Id*. at 95.[25]

       In essence, this is the same result reached by the courts in *Janitor*, *Staples* and *Sisk* and

this Court sees no plausible basis to reach a different outcome. [26]  Mr. Raskin asserts that there is

no precedent for "for a tenancy by the entirety interest being subject to a lien held by a creditor

on only one tenant's interest in the entirety property".  (Debtor's Post-Hr'g Mem. 13.)  But *Ades*

holds exactly the opposite and, moreover, that interpretation of the Homestead Exemption, while

---

[25] To be sure, *Ades'* reasoning relies in part upon the premise that the spouse's undivided interest in the entireties estate passed to the bankruptcy trustee.  To reach that conclusion, the *Ades* court relied upon *Beihl's* refusal to grant an injunction against a non-debtor spouse to prevent the sale of entireties property because, "[w]hatever title the bankrupt had then has already passed from him [to the trustee in bankruptcy] by operation of law." *Beihl*, 197 F. at 873.  In 1918, that conclusion – that the undivided interest of the filing spouse passed to the trustee – may have been wrong, *see Citizens Savings Bank, Inc., for use of Govatos v. Astrin*, 61 A.2d 419, 422 (Sup. Ct. Del. 1948), but it does not undo the fact that *Ades* deemed acceptable the post-bankruptcy fracturing of the entireties estate in Maryland as long as the hammer was slung by the legislature's hand.

[26] *Lashley*'s decision to nullify the joint lien in its entirety is not supportable in this District because *Lashley* held that, "the spouses each own the whole of the property" and "avoiding the judicial lien on the Debtor's interest avoids the lien on the whole property". 206 B.R. at 953.  That outcome neither comports with *Alvarez*, Maryland common law nor the language of the Homestead Exemption.

20

not perfect, makes the most sense.  Thus, the Susquehanna Liens will be avoided as to Mr.

Raskin's undivided interest in Eland Road but not as to Mrs. Raskin's.[27]

## VI.    Conclusion

For the reasons stated above, Mr. Raskin is entitled to avoid the Susquehanna Liens on

only his interest in the Residence he owns with Mrs. Raskin.  An Order memorializing this

holding will be issued.[28]

### End of Opinion

---

[27] Nevertheless, the Court strongly agrees with Mr. Raskin's assertion that it does not make sense as a matter of policy for the legislature to discriminate against married couples, and in favor of their joint creditors, by withholding the Homestead Exemption from spouses who are willing to file jointly.  It seems clear that the Homestead Exemption was enacted in part to help struggling Maryland families deal with our Nation's economic meltdown.  To use language that can only be interpreted as excluding the whole entireties estate from the statute's reach, and give joint creditors a leg up over other similarly situated creditors, would seem to run counter to that purpose.

[28] While the Court concludes that the correct result has been reached, the dispute presents a question of law for which there is no controlling decision from the Fourth Circuit. Likewise, on its surface this Opinion runs counter to common law principles expressed in *Alvarez*.  Finally, it also presents the rare conundrum of a state law that only applies in the federal system. Therefore, and especially in light of the constitutionally mandated diminution of the stature and authority of bankruptcy courts, *see Stern v. Marshall*, 131 S. Ct. 2594 (2011),  at the request of either party the Court is prepared to certify this question for direct appeal to the Fourth Circuit under the provisions of 28 U.S.C. § 158(d)(2)(A).